**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

**ELBERT A. WALTON, JR.
Plaintiff**

Vs.                                                            Case No. 4:14-CV-00846-ERW

**CHARLES E. RENDLEN, III
Defendant**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

**Table of Contents**

Table of Contents ..................................................................................................................... i

Table of Authorities ................................................................................................................. ii

Factual Background ................................................................................................................. 1

Points, Authorities and Argument ........................................................................................... 6

    Point I - Interference with Business Contracts/Expectancy is a State Claim ..................... 6

    Point II – State Claims Must Be Remanded to State Court ................................................. 6

    Point III – Defense of Judicial Immunity Does Not State a Claim Arising Under Federal Law Nor Grant Removal Authority ...................................................................................... 8

    Defendant Was Not Exercising His Official Responsibilities When He Sent A Message To Walton's Clients Urging That They Terminate Walton as Their Legal Counsel .......... 9

    Defendant Was Pretending to be Acting Under Color of Office and Right Though He Had No Such Right to Demand the Termination of Plaintiff as Legal Counsel to His Clients 12

    Defendant's Holding of Judicial Office Supplies Necessary Element of Coercion Though He Acted Outside the Scope of His Official Duties ...................................................... 12

Conclusion ............................................................................................................................ 14

i

## Table of Authorities

**Cases**

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) .................................................................. 11

*Evans v. United States, 504 U.S. 255 (1992)* ................................................................................ 13

*Harris v Harvey*, 605 F. 2d 330 (7th Cir. 1979) cert. denied, 445 U.S. 938 (1980) ............ 9, 10, 12

*Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999) ................................................... 11

Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo.1993) ...................................................... 6

*Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) ..................................................... 11

*State ex rel. Raack v. Kohn*, 720 SW 2d 941, 944 (Mo Banc, 1986) ............................................. 11

*Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331* ............................................... 10

*United States v. Margiotta*, 688 F.2d 108, 130 (2d Cir. 1982), *cert. denied*, 461 U.S. 913 (1983)
    ................................................................................................................................................ 13

**Statutes**

18 U.S.C. § 1951 ............................................................................................................................ 13

28 U.S.C. § 1441 .......................................................................................................................... 7, 8

28 U.S.C. § 1442 .......................................................................................................................... 6, 8

28 U.S.C. § 1442(3) ......................................................................................................................... 5

42 U.S.C. § 1983 .............................................................................................................................. 9

**Other Authorities**

H.R. Rep. No. 112-10, at 12 (2011) ................................................................................................. 7

ii

**Factual Background**

Plaintiff, Elbert Walton, is duly licensed to practice law in Missouri and the US Courts. Defendant, the Honorable Charles E. Rendlen, III, is a Judge of the US Bankruptcy Court for the Eastern District of Missouri; however, the Plaintiff has pled that his claim was brought against the Defendant in his personal and individual capacity and not in his official capacity based on extra-judicial actions or communications of the Defendant outside of the scope of his official office or duties as a Judge of the Bankruptcy Court.

James Robinson is also an attorney licensed to practice in Missouri as well as the US Courts.  On or about May 7, 2013, Robinson retained the Plaintiff to represent Robinson in defense of a contested matter filed against Robinson, by one of his bankruptcy clients, pending in the U. S. Bankruptcy Court for the Eastern District of Missouri.  The Defendant was and is the Judicial Officer presiding over said contested matter. The Plaintiff entered appearance as attorney for Robinson in said contested matter, appeared at various hearings held on various issues arising in said matter as well as filed numerous motions with the court in defense of Robinson in said matter.  One of the Motions filed was a Motion to Recuse Defendant for cause, to wit, bias and prejudice and lack of impartiality on the part of Defendant toward both (a) Robinson arising from prior prosecutions of Robinson's law firm, in which the Judge had served as the party plaintiff in two of such cases, and (b) Plaintiff arising during the course of Plaintiff's assertions of defenses in said case to which the Defendant took personal offense.  Defendant denied said Motion for Recusal.  Several other motions were filed in Robinson's defense; all of which were denied by defendant, within one day of said motions being filed, without the opposition filing memorandum in opposition to said motions and without evidentiary hearings or

1

oral argument thereon..  Moreover, in memoranda opinions issued by Defendant accompanying his denial of said Motions, Defendant made various personal criticisms of Plaintiff and several threats against the Plaintiff as Robinson's defense counsel.

On or about December 4, 2013, that same client in said contested matter, filed an adversarial complaint against Robinson and several other defendants, including Robinson's firm and two employees of the firm, as well as a former employee of his firm and an attorney associated with Robinson in handling bankruptcy cases.  The adversarial case was initially assigned to the Honorable Kathy Surratt-States, the presiding US Bankruptcy Court Judge.  Prior to issuance of process in the case, Judge States issued an Order to Show Cause why said adversarial case should not be transferred to Defendant Judge Rendlen to preside over same under local rules of the bankruptcy court.  Robinson, his firm, Critique Services, and the two employees, Beverly Diltz and Renee Mayweather, retained Walton to respond to said Order to Show Cause and advised Walton that they also would employ him to defend the case in general once service of process was had.

Walton entered special appearance in the case solely for the purpose of responding to said order to show cause, and filed a special response and appeared specially at oral argument wherein Walton argued that Judge States should retain jurisdiction over the case in that the Defendant was biased and prejudiced against Robinson, Critique, Diltz, Mayweather and Plaintiff, as well, in that Critique and Diltz had been prosecuted by Judge Rendlen when he was US Trustee for the Eastern District of Missouri.  Ross Briggs, an attorney who is associated with Critique and Robinson on several bankruptcy cases, who was also named as a party defendant in said adversary case, joined or aligned himself with the position of Walton's clients and also

asserted to Judge States that she should retain jurisdiction of the adversarial case in that Briggs too had been prosecuted by Judge Rendlen when Judge Rendlen was employed as U.S. Trustee.

Judge States transferred the case to Judge Rendlen under the proviso that the defendants in the adversarial case could file a Motion for Recusal with Judge Rendlen and assert the same grounds that had been asserted to her.

Pending being served process, Robinson, Critique, Diltz and Mayweather, with Walton as their counsel, as well as said other co-defendants, Ross Briggs, the attorney associated with Robinson, entered into settlement negotiations as to the adversarial case with the adverse party, LaToya Steward and her counsel, David Gunn.

During the proceedings in the contested matter to which only Robinson and Critique were party defendants or respondents, the Defendant Judge Rendlen has issued interlocutory sanctions against Robinson and Critique. Robinson and Critique sought leave to appeal said interlocutory orders which was denied thus they determined to wait until final judgment in the case to seek an appeal of the sanctions order. In negotiating a settlement of the adversarial case, the sanctions issues in the contested matter were also addressed.

The parties determined to seek out the Chapter 7 trustee who was assigned to the underlying bankruptcy case to serve as a mediator in the settlement negotiations. During said mediation, the Chapter 7 trustee, Rebecca Case, to Plaintiff's surprise, advised the parties that the Defendant Judge Rendlen, through one of his court staff persons, had sent a message to the parties involved in the settlement negotiations. None of the parties' defendants had been served process in the adversarial case a t the time of said mediation. Plaintiff had not had any communication with Defendant Judge Rendlen nor advised Defendant Judge Rendlen of the mediation nor had Plaintiff discussed with his clients nor any of the other parties to the adversary

3

case, or their counsel, nor the Chapter 7 trustee, inclusion of input from Defendant Judge Rendlen in the settlement negotiations.  Thus Plaintiff was disturbed that Defendant Judge Rendlen even had knowledge of said mediation and had sent a message to the parties as to settlement of the case.  Even worse, however, Defendant Judge Rendlen's message included a command that Plaintiff's client, James Robinson, terminate Plaintiff as his counsel on the cases pending before Defendant in the Bankruptcy Court, and that Robinson never employ Plaintiff as his counsel on any cases again.  In addition, Defendant's message included a demand that Robinson apologize for moving, by and through Walton as his counsel, to recuse Defendant, accusations of bias and prejudice against the Defendant, and assertion of various defenses in said contested matter and appealing of the rulings of the court.

No settlement was reached during said mediation.  The parties continued to attempt to settle the case thereafter.  During said settlement negotiations, Defendant Judge Rendlen's position as judge presiding over the adversary case and the message that he had sent to the parties during the mediation created difficulties for the parties and their counsel in working out the terms of a settlement agreement.  Not only did the parties express fears of retaliation by Defendant Judge Rendlen based on the message he had sent to the parties, but the Plaintiff's counsel in the adversary case, David Gunn, also expressed fears of retaliation by Defendant Judge Rendlen against Gunn on other cases that Gunn was handling in US Bankruptcy Court in the event of a settlement that disposed of the contested matter and rendered the sanctions moot and unenforceable.

Gunn proposed to submit the settlement agreement to Defendant Judge Rendlen for his approval.  Walton objected to same and asserted that the cases should just be settled and dismissed with prejudice.  Robinson and Walton also objected to language in the settlement

4

agreement itself. Suddenly, sua sponte, Judge Rendlen issued an Order indicating his intent to sanction Robinson and Critique and Walton personally for failure to comply with discovery orders. Judge Rendlen then ordered Gunn to submit an affidavit as to attorney's fees and expenses incurred by their client Steward as the basis upon which Judge Rendlen could issue sanctions against Walton and Robinson. Robinson, Critique, Diltz and Mayweather were fearful that no settlement could be had with Walton as their counsel based on the message sent to Robinson by Defendant Judge Rendlen that he should fire Walton and the sudden, sua sponte, issuance of the notice of intent to impose sanctions against Walton and Robinson and Critique. Moreover, they expressed fears that if the Defendant failed to approve the settlement, and that they were then forced to go to trial with Defendant as presiding judge, that he would retaliate against them for retaining Walton as their legal counsel. Thus, Robinson, Critique, Diltz and Mayweather advised Walton that, based on the message sent to them from Defendant during the mediation, they felt compelled to terminate his services as legal counsel in the negotiations of settlement of the adversary case and contested matter and that they should not employ his services as legal counsel in the adversary case in the event service of process was had and they had to move forward with defense of the adversarial case. Thus they sent Walton emails advising him that they were terminating his employment as their legal counsel. Moreover, Robinson filed a notice with the court that he was terminating Walton's services as his legal counsel in the contested matter.

    Walton thereafter filed a multi-count Petition for Damages in state court against the Defendant Judge Rendlen alleging claims arising under state law, to wit, (a) tortious interference with a contract and (b) tortious interference with a contractual expectancy. The Defendant has removed the case to the federal district court under 28 U.S.C. § 1442(3) on the grounds that the

5

Defendant has judicial immunity to the claims of Plaintiff. Plaintiff has moved to remand the case to state court on the grounds that the defense of judicial immunity is cognizable under state law, and thus does not depend on federal law; moreover, the Defendant's extra-judicial actions as set forth in Plaintiff's First Amended Petition did not occur within the scope and course of his judicial office and thus that he is not protected by judicial immunity from the claims of Plaintiff in the case at bar.

**Points, Authorities and Argument**

**Point I – Tortious Interference with Business Contracts/Expectancy is a State Claim**

As held in *Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo.1993), a claim for tortious interference with a contract and/or business expectancy requires the following elements of proof:

> (1) a valid existing contract or business expectancy;

> (2) the defendant has knowledge of the existing contract or business expectancy;

> (3) a breach or termination of the contract or business expectancy is induced or caused by the defendant's intentional interference;

> (4) there is no justification for the breach or termination; and

> (5) there are ascertainable damages from the breach.

Plaintiff's First Amended Petition has clearly plead the aforesaid elements of tortious interference with a contract and with a business expectancy under state law and not under federal law.

**Point II – State Claims Must Be Remanded to State Court**

Defendant has removed Plaintiff's state tort claims against the Defendant, a Judge of the Bankruptcy court, under 28 U.S.C. § 1442(a) and (a)(3), which provide as follows:

6

*(a) A civil action... that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place where it is pending: \*\*\**

*(3) Any officer of the courts of the United States, for or **relating to any act under color of office or in the performance of his duties;*** (Emphasis mine)

Section 1442(a)(3) exceeds the boundaries of Article III jurisdiction of the federal district court. *Thomas v. Shelton*, 740 F.2d 478, 483 (7th Cir. 1984).[1] Therefore, under 28 U.S.C. § 1441(c), the state law claims must be remanded to the state court.

The amendments to the federal removal statutes. 28 U.S.C. § 1441 that went into effect on December 7, 2011 and made applicable to any or all actions "commenced" in state court on or after January 6, 2012 stripped federal district courts of "pendent" jurisdiction to hear state law claims in a removed action if they are not otherwise within the original or supplemental jurisdiction of the court. 28 U.S.C. § 1441(c) provides:

*(c) Joinder of Federal Law Claims and State Law Claims*

*(1) If a civil action includes—*

*(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and*

*(B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).*

*(2) Upon removal of an action described in paragraph (1), the district court **shall** sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).* (Emphasis mine)

---

[1] Recognizing the unconstitutionality of removal of pendent state claims to federal district courts, Congress amended Section 1441(c) to preclude federal courts from adjudicating removed pendent state law claims. H.R. Rep. No. 112-10, at 12 (2011) (stating that new Section 1441(c)'s "sever-and-remand approach is intended to cure any constitutional problems")

Thus, Section 1441(c) now provides that when a state court case includes both a removable federal claim and a non-removable state claim, although a defendant can remove the entire action to the federal district court, after the case is removed, the federal district court must sever the non-removable state claims from the action and "*shall* remand the severed state claims to the State court from which the action was removed."  In the case at bar, there is no removable federal claim that may be constitutionally removed to federal district court, joined with a state claim.  Therefore, the case at bar was not constitutionally removable to federal district court in the first place.  Section 1442 confers no constitutional federal district court removal jurisdiction over Plaintiff's purely state law claims, because said state law claims are not "***relating to any act under color of office or in the performance of his duties***" in that the act or communication of Judge Rendlen urging Plaintiff's clients to terminate his services was made extra-judicially and outside of the performance of Judge Rendlen's official duties.  Moreover, even if the Plaintiff's purely state law claims had been removable due to the fact that the case included a federal claim, as provided by 28 U.S.C. § 1441(c)(2), Plaintiff's state law claims must be remanded to the state court.

**Point III – Defense of Judicial Immunity Does Not State a Claim Arising Under Federal Law Nor Grant Removal Authority**

Under the Federal officer removal statute, 28 U.S.C. § 1442, a Federal officer is able to remove a case from State court to Federal court when it involves the Federal officer's exercise of his or her official responsibilities; thus, the Defendant in his notice of removal claims that Defendant's actions, upon which Plaintiff's cause of action arises, are protected by judicial immunity.  Plaintiff asserts that Plaintiff's asserted claims, as set forth in Plaintiff's First Amended Petition filed in state court, plead that the Defendant was not exercising his official responsibilities as a U.S. Bankruptcy Court Judge, but acting totally outside the scope of his

8

judicial duties, extra-judicially, and thus Defendant does not enjoy judicial immunity; and therefore, the mere fact that Defendant is a judicial officer does not grant him the right to remove the state law claims to federal district court.

**Defendant Was Not Exercising His Official Responsibilities When He Sent A Message To Walton's Clients Urging That They Terminate Walton as Their Legal Counsel**

The court should note the excerpt below from the case of *Harris v Harvey, 605 F. 2d 330 (7th Cir. 1979) cert. denied, 445 U.S. 938 (1980)*, a case similar to the case at bar as to the issue that has been asserted as grounds for removal to federal district court, to wit, judicial immunity. In the *Harris* case, a state judge, Harvey, attempted to get a police officer, Harris, fired, by Judge Harvey making out of court disparaging statements about Harris to said police officer's superiors and to the press. The Police Officer sued the Judge for violations, under 42 U.S.C. § 1983, of due process and racial discrimination. Judgment was entered in Harris' favor and Harris was awarded both compensatory and punitive damages.

Similarly, in the case at bar, Judge Rendlen attempted to get Plaintiff fired as legal counsel to his clients by making an out of court demand to Plaintiff's clients, Robinson and Critique, in the presence of two other clients of Plaintiff as well as other parties to the adversarial action, that Plaintiff's client, James Robinson, (a) fire Plaintiff as his counsel, in two cases over which Judge Rendlen was the presiding Judge, and (b) never employ Walton in the future as his legal counsel. Such out of court statements made by Judge Rendlen, to Walton's clients, that Robinson and Critique should fire Walton, in no way can be found "*relating to any act under color of office or in the performance of his duties*".

Walton sued Judge Rendlen under state law for both tortious interference with a contract and tortious interference with a business expectancy, seeking both compensatory and punitive damages. Walton seeks punitive damages alleging that Judge Rendlen's communication to

9

Walton's clients that said clients should fire Walton as their legal counsel was made in order to retaliate against Walton for defenses that Walton had raised for Robinson in said two cases being presided over by Judge Rendlen, and particularly a Motion to disqualify Judge Rendlen due to bias and prejudice against both Robinson and Walton and a Return to Order to show cause also alleging bias and prejudice on Judge Rendlen's part against Walton and Robinson.[2]

The defense of judicial immunity was raised by the defense in the Harris case. The Harris case is clear authority for the court to find that Judge Rendlen does not have judicial immunity in the case at bar. Thus, Judge Rendlen's tortious interference is actionable and subject to an award not only of compensatory damages but punitive damages as well.

Addressing this issue, the court in *Harris* held:

*"Neither Judicial Nor Prosecutorial Immunity Protects the Acts for Which Defendant Was Held Liable.*

*In support of reversal, defendant's principal argument is that he is immune from any liability to plaintiff for damages arising from his acts on the ground that he enjoyed judicial and prosecutorial immunity. As to the former, the trial judge properly applied the rule of Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, in holding that the* **acts perpetrated outside of Judge Harvey's courtroom and not then a part of his judicial functions were undertaken in the "absence of all jurisdiction."** *These acts involved the defendant's repeated communications to the press and to city officials over the course of more than a year.* **These communications were critical of plaintiff and called for action to be taken against him**. *Many of them were made while plaintiff was awaiting trial on the criminal charges stemming from the John Doe proceeding.* **Such acts were not judicial because they were not functions normally performed by a judge, and were not "to the expectations of the parties" in that as to these acts the parties did not deal with him in his judicial capacity.** 435 U.S. at 362, 98 S.Ct. at 1107. *Accordingly, the trial judge instructed the jury that although damages could not be assessed against Judge Harvey for conducting the John Doe proceedings,* **he could be held liable for his extra judicial acts**. *Since no liability was imposed where Judge Harvey enjoyed judicial immunity, no error was committed on that score.* (Emphasis mine) *Harris v Harvey*, op. cit., at 336

---

[2] This retaliation is further evidenced by the fact that upon being served process in the case at bar, Judge Rendlen, sua sponte, issued a Notice of Intent to Sanction Walton and his client for allegedly making false and fraudulent statements in documents filed with the court some seven months prior to commencement of the state law action.

Judicial immunity is an affirmative defense, not a cause of action, and thus not a federal claim removable from state court to federal district court.  Moreover, as noted above, the Defendant's actions are not protected by judicial immunity in that they were undertaken extra-judicially and outside of the scope of his judicial office, and thus to the extent asserted as the basis for removal of the cause of action from state to federal court, under 28 U.S.C. § 1442(a)(3), said affirmative defense confers no removal jurisdiction upon the federal district court, in that Judge Rendlen's out of court or extra-judicial communication to Walton's clients that they should fire Walton as their legal counsel and never employ him again, can in no way be found "*relating to any act under color of office or in the performance of his duties.*"

As the Supreme Court noted in *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Thus, a "case may not be removed to federal court on the basis of a federal defense even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense at issue is the only question truly at issue in the case." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (internal quotation omitted).

However, it should be noted that even if a state court complaint asserts only state-law claims, a defendant may be able to remove under the Federal Officer Removal statute if a colorable federal defense exists as to those claims.  As the Supreme Court held in *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999), assuming the other elements of the statute are met, the federal question element is met if the defense to the state-law claim *depends* upon federal law.  Judicial immunity is a defense that may be raised under Missouri law, *State ex rel. Raack v. Kohn*, 720 SW 2d 941, 944 (Mo Banc, 1986) and thus the Defendant's defense of judicial immunity does not depend upon federal law.

11

**Defendant Was Pretending to be Acting Under Color of Office and Right Though He Had No Such Right to Demand the Termination of Plaintiff as Legal Counsel to His Clients**

Addressing this issue, the court in *Harris* held:

*"Defendant Was Acting Under Color of Law.*

*The district court instructed the jury that he had found as a matter of law that the defendant had acted under color of law (Tr. 1323). Defendant contends in his reply brief that if he acted as a private citizen the state action necessary for a Section 1983 claim is lacking, whereas if he acted in his judicial capacity he is immune from civil liability (Reply Br. 7). We have already discussed our agreement with the district court that immunity does not apply because Judge Harvey was not performing judicial functions. We also agree that nonetheless Judge Harvey was acting under color of law by using the power and prestige of his state office to damage the plaintiff.[8] As the district court said,*

*"I was convinced at trial and remain convinced as a matter of law that the **defendant acted under the pretense of his standing as a county judge.** No reasonable juror, in my opinion, could find otherwise. Letters were written on official stationery. Press releases were disseminated by the defendant, identified as a county judge, through the media. **The defendant brought to bear his influence as a county judge on those to whom he wrote and spoke**. When the defendant Judge Harvey urged the discharge of Lieutenant Harris with racial overtones in out-of-court conversations with Captain Pavkovich [sic] and Assistant Chief Hagopian, he was acting as a functionary of the state * * *." (App. 30.)"* Harris v Harvey, op. cit., at 337

Thus Defendant, in the case at bar, acted not under actual color of law or office but under the pretense of his standing as a bankruptcy judge, and brought to bear his influence as a bankruptcy judge upon litigants in his court or upon those to whom he sent a message:  "Fire Walton or you will have to face my retaliatory wrath in my courtroom!

**Defendant's Holding of Judicial Office Supplies Necessary Element of Coercion Though He Acted Outside the Scope of His Official Duties**

Cases arising under the Hobbs Act also give support to a finding that the Defendant may be held liable for his tortious conduct or wrongful pretensive use of the color of Defendant's judicial official office to coerce (a) Robinson into terminating his contract with Walton for provision of legal services and (b) Robinson, Critique, Diltz and Mayweather to refrain from employing Walton as their counsel in the adversary case once service of process was had.  The

12

Hobbs Act (18 U.S.C. § 1951) defines extortion in terms of "*the obtaining of property from another, with his consent . . .* **under color of official right**." (emphasis mine)  The *under color of official right* aspect of the Hobbs Act is derived from the common law definition of extortion, as noted by the US Supreme Court:

> "[a]t common law, extortion was an offense committed by a public official who took **'by color of his office'** *money that was not due to him for the performance of his official duties. . . . Extortion by the public official was the rough equivalent of what we would now describe as 'taking a bribe.'* "Evans v. United States, 504 U.S. 255 (1992). Emphasis mine

While the definition of extortion under the Hobbs Act with regard to force, violence or fear requires the obtaining of property from another with his consent *induced* by these means, the *under color of official right* provision does not require that the public official take steps to induce the extortionate payment: The Supreme Court has held that "*the coercive element is provided by the public office itself*." *Evans v. United States,* 504 U.S. 255 (1992); see also, *United States v. Margiotta*, 688 F.2d 108, 130 (2d Cir. 1982), *cert. denied*, 461 U.S. 913 (1983) ("*[t]he public officer's misuse of his office supplies the necessary element of coercion . . . .*"  Thus a jury may find that Judge Rendlen, by the mere fact that he is a Bankruptcy Judge, coerced clients and potential clients of Walton to both terminate his services as their legal counsel and to refrain from employing Walton as their legal counsel in the future.

The coercive nature of the Defendant's judicial office then does not vest the Defendant with judicial immunity, nor does it pose a colorable federal defense, rendering the case at bar removable to federal district court, instead it is merely an element upon which a jury may take into consideration in finding that the Defendant maliciously tortiously interfered with Walton's contract to provide legal services to Robinson and Critique and tortiously interfered with Walton's contractual expectancy that he would be employed to defend Robinson, Critique, Diltz

13

and Mayweather in the adversary case that had been filed against them once they were served process.

**Conclusion**

For the reasons set forth above, the court should remand the Plaintiff's case against Defendant Judge Rendlen to state court.

**METRO LAW FIRM, LLC.**

By: *[signature]*

Elbert A. Walton, Jr.
Mo Bar #24547
Attorney for Plaintiff
2320 Chambers Rd.
St. Louis, MO 63136
Telephone: (314) 388-3400
Fax: (314) 388-1325
E-mail address: elbertwalton@elbertwaltonlaw.com

**CERTIFICATE OF SERVICE:** By signature below, I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the Electronic Filing System, and that a copy will be served by the Electronic Filing System upon those parties indicated by the CM/ECF system.

By: *[signature]*