UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELBERT A. WALTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV00846 ERW |
| | ) | |
| CHARLES E. RENDLEN, III, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on "Defendant's Motion to Dismiss" [ECF No. 17].

**I.   BACKGROUND**

Plaintiff Elbert Walton, Jr. initiated this lawsuit by filing a Petition, styled Elbert A. Walton, Jr. v. Charles E. Rendlen, III, in the Circuit Court of the City of St. Louis on April 14, 2014, alleging tortious interference with contract and tortious interference with business expectancy.  At all times pertinent to this matter, Charles E. Rendlen, III was a duly appointed judge for the United States Bankruptcy Court for the Eastern District of Missouri (hereafter referred to as "Bankruptcy Court").

On May 2, 2014, Judge Rendlen removed the Petition to this Court pursuant to 28 U.S.C. §§ 1446(a) and 1442(a)(3).  On May 6, 2014, Plaintiff filed a Motion to Remand Case to State Court (and Memorandum in Support) [ECF No. 3] and a First Amended Petition (hereafter "First Amended Complaint") [ECF No. 4].   In response, Judge Rendlen filed his Memorandum in Opposition [ECF No. 5].  Upon consideration of Plaintiff's Amended Motion to Remand [ECF No. 6], Judge Rendlen's Memorandum in Opposition [ECF No. 7], and Plaintiff's Reply [ECF No. 9], this Court issued an Order denying Plaintiff's Amended Motion to Remand, on June 10,

2014 [ECF No. 13].

On July 31, 2014, Judge Rendlen filed the pending Motion to Dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6) [ECF No. 17].  Specifically, Judge Rendlen contends judicial immunity bars Walton's claims.  For purposes of this Motion to Dismiss, the Court accepts as true the following facts alleged in Plaintiff's First Amended Complaint.  *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010).

In May 2013, James Robinson retained Plaintiff to represent him as defense counsel in a "contested matter" pending in the Bankruptcy Court.  Plaintiff has since appeared as Robinson's attorney in the contested matter, appearing at various hearings and making filings with the Bankruptcy Court.  Judge Rendlen was and continues to be the judicial officer presiding over the contested matter, and thus knew Robinson employed Plaintiff as counsel.  At some point[1] during the proceedings, Plaintiff moved for recusal of Judge Rendlen, based on bias, prejudice, and lack of impartiality.  At another point, Judge Rendlen issued sanctions against Robinson.

Eventually, an "adversarial case related to [the] contested matter"[2] arose, and in December 2013, four defendants in that case (James Robinson; Critique Services, LLC; Beverly Diltz; and Renee Mayweather) retained Plaintiff to represent them in their defense.  However, "Plaintiff entered special and limited appearance as attorney for [these defendants] in said adversarial case, solely for purposes of filing a response to said Order to Show Cause, filed a special response thereto, and in addition appeared specially, without submission to the personal

---

[1] The Court is forced to use this vague chronological signal multiple times because, with the exception of two specific dates, Plaintiff's First Amended Complaint fails to provide any indication of when the events giving rise to this lawsuit occurred.

[2] ECF No. 4 at ¶ 28.  Plaintiff uses the phrases "adversarial case" and "contested matter" throughout the First Amended Complaint to differentiate between the two cases.

jurisdiction of the court, at a hearing held on said Order to Show Cause"[3] [ECF No. 4 at ¶ 31]. During the hearing, Plaintiff argued the adversarial case should not be transferred to Judge Rendlen, on grounds of bias, prejudice, and lack of impartiality. The presiding judge transferred the adversarial case to Judge Rendlen, and thus, Judge Rendlen knew of the defendants' hiring of Plaintiff. Robinson, Diltz, and Mayweather "had advised" Plaintiff they "intended to retain" Plaintiff to represent them in defense of the adversarial case [ECF No. 4 at ¶¶ 48, 62, 77]. At some point, the relevant parties for both the contested matter and adversarial case entered into settlement negotiations;[4] the sanctions Judge Rendlen had issued against Robinson were one subjects of negotiation in both matters [ECF No. 4 at ¶¶ 10, 12, 35, 37].

In conjunction with the settlement negotiations, Judge Rendlen directed a member of his court staff to deliver a message "to the Chapter 7 trustee presiding over the underlying bankruptcy case with directions, instructions, and orders that said Chapter 7 trustee deliver said communications to Robinson, Critique, Diltz and Mayweather as well as to the other parties to the [contested and] adversarial case matter[s] and counsel for the parties including . . . Plaintiff" [ECF No. 4 at ¶¶ 41, 16]. This communication "stated that in order for the sanctions that had been issued by the court to be withdrawn that as a part of the terms of the settlement that must be agreed upon by the parties, Robinson had to terminate Walton as his counsel and could not retain

---

[3] At that point, a judicial officer other than Judge Rendlen was presiding over the adversarial case, and prior to service of process on the four defendants, said judicial officer "issued an Order to Show Cause why the adversarial case should not be transferred to [Judge Rendlen], since he was presiding over the underlying Bankruptcy case, as provided under the local rules of the Bankruptcy Court" [ECF No. 4 at ¶ 30].

[4] Plaintiff's First Amended Complaint does not explicitly address whether settlement negotiations for the contested matter and adversarial case occurred at the same place and time. However, the Court has inferred the negotiations were, in fact, jointly held, based on statements made in the First Amended Complaint (specifically, that both Diltz and Mayweather were "present in and participated in the settlement negotiations as to the adversary case, as well as said contested matter, when the unsolicited . . . communication . . . was delivered[.]") [ECF No. 4 at ¶¶ 64, 79].

Walton to provide legal services on any cases in which Robinson was a party in the future" [ECF No. 4 at ¶ 18]. The communication also demanded Robinson apologize for "filing the Motion for Recusal and the other Motions and appeals filed in Robinson's defense in [the] contested matter, as a condition or term for the parties settling the case and effecting the lifting of sanctions issued against Robinson" [ECF No. 4 at ¶ 25].

As a result of this communication, Robinson terminated Plaintiff's representation as his defense counsel in the contested matter. Similarly, Robinson, Critique, Diltz, and Mayweather terminated Plaintiff's limited representation as their defense counsel in the adversarial case. Further, Robinson, Diltz, and Mayweather advised Plaintiff they would not retain him for a general appearance in the adversarial matter. Thus, Plaintiff's First Amended Complaint alleges Judge Rendlen "intentionally, willfully, purposefully[,] and with malice aforethought" tortiously interfered with Plaintiff's contracts with Robinson, Critique, Diltz, and Mayweather. The First Amended Complaint further alleges Judge Rendlen "maliciously" interfered with Plaintiff's business expectancies with Robinson, Diltz, and Mayweather [ECF No. 4 at ¶¶ 13, 38, 53, 67, 82]. Plaintiff seeks damages for loss of legal fees, as well as punitive damages for Judge Rendlen's "intentional, willful, purposeful, and malicious conduct" [ECF No. 4 at ¶¶ 26, 46, 55]. Judge Rendlen moves to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure (FRCP) 12(b)(6).

## II.   STANDARD

Under FRCP 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation.  *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted).  This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

The Court must accept the factual allegations in the Complaint as true and grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (internal citation omitted).  Where the allegations on the face of the complaint show "there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."  *Young v. St. John's Mercy Health Sys.*, No. 10-824, 2011 WL 9155, at *4 (E.D. Mo. Jan. 3, 2011) (internal citation omitted).

### III.    DISCUSSION

The First Amended Complaint raises two claims of tortious interference with contract and three claims of tortious interference with business expectancies.  Judge Rendlen moves to dismiss all claims on the basis of judicial immunity.  For reasons stated *infra*, the Court shall grant the Motion to Dismiss.

### A. *Judicial Immunity*

Generally, a judge is immune from suits for money damages. *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam). As with other forms of official immunity, judicial immunity provides immunity not only from the assessment of damages, but also from suit itself. *Id.* at 11. Further, "allegations of bad faith or malice" do not overcome judicial immunity, and the immunity applies "even when the judge is accused of acting maliciously or corruptly." *Id.*; *Pierson v. Ray*, 386 U.S. 547, 554 (1967). "A judge is immune from suit . . . in all but two narrow sets of circumstances." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, judges do not enjoy immunity for "nonjudicial action, *i.e.*, actions not taken in the judge's judicial capacity." *Id.* Second, judges are not immune for actions "taken in the complete absence of all jurisdiction," even if such actions are judicial in nature. *Id.* Accordingly, the bulk of Judge Rendlen's Memorandum in Support of this pending motion argues his conduct does not fall into either of these two exception categories.

    1. Judicial Act

First, Judge Rendlen contends his actions in communicating how Robinson could satisfy the sanctions were judicial in nature. The Court agrees. Determining whether an act is "judicial" relates to "the nature of the act itself." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982).

Here, the allegations in the First Amended Complaint describe Judge Rendlen communicating his determination of how Robinson's court-imposed sanctions (from a case over which Judge Rendlen was presiding) could be satisfied. Clearly, such determinations and communications are activities normally performed by a judge in his or her judicial capacity. The

fact Judge Rendlen chose an informal means of communication does not inherently make his conduct "non-judicial." *See Stump*, 435 U.S. at 362-63 ("Because Judge Stump performed the type of act normally performed only by judges and because he did so in his capacity as a Circuit Court Judge, we find no merit to respondents' argument that the informality with which he proceeded rendered his action non[-]judicial and deprived him of his absolute immunity."); *Birch*, 678 F.2d at 756 ("We conclude that neither the possible commission of procedural errors nor the informality of the proceedings is sufficient to deprive Judge Mazander of immunity with respect to plaintiff's claim for damages."). Nor does delivery of Judge Rendlen's message by his staff member require this Court to find Judge Rendlen acted non-judicially. *See Mireles*, 502 U.S. at 13 ("Nor does the fact that Judge Mireles' order was carried out by police officers somehow transform his action from 'judicial' to 'executive' in character.").

Finally, this Court has previously found Judge Rendlen's alleged sanctions message to be judicial in nature. In denying Plaintiff's Amended Motion to Remand, the Court stated:

> Here, the First Amended Petition alleges Judge Rendlen advised the sanctions would be withdrawn if Robinson terminated Walton and refrained from hiring him in the future. These sanctions were court-imposed, in the course of ongoing litigation over which Judge Rendlen presided. Likewise, the settlement negotiations pertained to ongoing litigation over which Judge Rendlen presided. Clearly, these allegations describe judicial acts.
>
> ECF No. 13 at 8.

Although Plaintiff's Memorandum in Opposition to this Motion to Dismiss does not expressly discuss the case under the framework of judicial immunity exceptions, pieces of Plaintiff's argument can be broadly construed to fall into the "judicial acts" and "complete absence of all jurisdiction" categories.[5] Presumably, regarding the "judicial act" issue, Plaintiff's

---

[5] Plaintiff's Memorandum provides three argument headings. The Court characterizes the first as arguing Judge Rendlen's actions were non-judicial in nature. The Court discusses the second

- 7 -

first argument heading states, "Defendant Was Not Exercising His Official Responsibilities When He Sent A Message To [Plaintiff's] Clients Urging That They Terminate [Plaintiff] as Their Legal Counsel" [ECF No. 19 at 6].  However, Plaintiff spends the entirety of this portion of his Memorandum arguing against the removal of this case to federal court,[6] an issue previously ruled upon by the Court [ECF No. 19 at 6-8].  Plaintiff's main source of legal support on this point is *Harris v. Harvey* (605 F.2d 330 (7th Cir. 1979)),[7] a case this Court has previously found to be unpersuasive and "highly distinguishable on its facts" from the case at hand [ECF No. 13 at 9].  As best the Court can discern, Plaintiff's only reference to the relevant issue ("judicial acts") is found where, in quoting *Harvey*, Plaintiff adds emphasis to the portion of the opinion where the Seventh Circuit determined a judge's actions were not judicial and held him "liable for his extra judicial acts" [ECF No. 19 at 8].  This Court has already denied Plaintiff's Motion to Remand, and need not address for a second time Plaintiff's arguments against removal.  Further, to the extent Plaintiff's discussion of *Harvey* provides an argument for finding

---

argument heading in the context of whether Judge Rendlen acted in the "complete absence of all jurisdiction."  Plaintiff's third argument heading states, "Defendant's Holding of Judicial Office Supplies Necessary Element of Coercion Though He Acted Outside the Scope of His Official Duties."  Although this heading would appear to introduce an analysis of the "judicial act" issue, the entire section is devoted to an argument based on the definition of "extortion" under the Hobbs Act (18 U.S.C. § 1951).  Because this statutory provision is irrelevant to the narrow issue of judicial immunity from a damages claim, the Court need not address the argument presented under the third heading.

[6] "Judicial Immunity is an affirmative defense, not a cause of action, and thus not a federal claim removable from state court to federal district court [ECF No. 19 at 8].

[7] In that case, a Wisconsin judge made repeated racially charged remarks about the plaintiff.  *Id.* at 333-36.  He wrote defamatory letters on official stationery and accused the plaintiff of being "a fixer, briber, and a sycophant."  *Id.* at 334, 337.  He was "critical" of the plaintiff and "called for action to be taken against him."  *Id.* at 336.  Furthermore, the events in *Harvey* occurred "over the course of more than a year," and the judge's acts "involved . . . repeated communications to the press and to city officials[.]"  *Id.* at 336.  The Seventh Circuit concluded the judge was not entitled to judicial immunity because the acts at issue were not "to the expectations of the parties" and because the parties did not deal with the judge in his judicial capacity.  *Id.* (internal quotations omitted).

Judge Rendlen's actions to be non-judicial, the Court again finds *Harvey* unpersuasive and distinguishable on its facts.[8]

Therefore, the Court finds the conduct of Judge Rendlen alleged in Plaintiff's First Amended Complaint constitutes judicial acts.

### 2. Complete Absence of All Jurisdiction

Second, Judge Rendlen argues his conduct in communicating how Robinson could satisfy the sanctions did not occur in the complete absence of all jurisdiction. Again, the Court agrees. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57 (internal quotations omitted). In determining the applicability of judicial immunity, "the scope of the judge's jurisdiction must be construed broadly[.]" *Id.* at 356. "If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356). Further, "[A]n action – taken in the very aid of the judge's jurisdiction *over a matter before him* – cannot be said to have been taken in the absence of jurisdiction." *Schottel*, 687 F.3d at 373 (internal quotations omitted, emphasis in original).

Here, Judge Rendlen had the authority to impose sanctions on Robinson. Federal Rule of Bankruptcy Procedure (FRBP) 9011(c)(1)(B) empowers bankruptcy courts to "impose sanctions on its own initiative." *See In re Young*, 507 B.R. 286, 291-92 (B.A.P. 8th Cir. 2014). Similarly,

---

[8] Again, Plaintiff's organization and phrasing of his argument leave some uncertainty as to exactly which aspect of the judicial immunity framework Plaintiff seeks to analyze with this discussion. Therefore, to the extent Plaintiff intended this portion of his Memorandum to argue Judge Rendlen acted in the complete absence of jurisdiction, the Court similarly finds *Harvey* to be unpersuasive.

Bankruptcy Code section 105(a) provides bankruptcy courts "with authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code, and allows the court to 'tak[e] action or mak[e] any determination necessary or appropriate to . . . prevent an abuse of process.'" *In re Young*, 507 B.R. at 292; 11 U.S.C. § 105(a).  Finally, a bankruptcy court may possess "inherent power" to sanction "abuse litigation practices." *In re Young*, 507 B.R. at 292 (quoting *Law v. Siegel*, 134 S.Ct. 1188, 1194 (2014)).

Clearly, in communicating information relating to the satisfaction of sanctions he had imposed earlier, Judge Rendlen did not act in the complete absence of all jurisdiction.  Having had jurisdiction to impose the sanctions in the case before him, Judge Rendlen's message to Robinson regarding those sanctions was certainly delivered "in aid" of the Bankruptcy Court's jurisdiction.  Once again, this Court has already weighed in on the jurisdiction question.  In denying Plaintiff's Amended Motion to Remand, the Court stated, "Based on the face of [Plaintiff's] allegations, the Court easily concludes Judge Rendlen's alleged actions were 'in the very aid' of his jurisdiction, which included sanctions orders issued in an ongoing matter over which he presided" [ECF No. 13 at 9].

Plaintiff's second argument heading in his Memorandum in Opposition states, "Defendant Was Pretending to be Acting Under Color of Office and Right *Though He Had No Such Right* to Demand the Termination of Plaintiff as Legal Counsel to His Clients" [ECF No. 19 at 9 (emphasis added to explain the Court's characterization of this argument as relating to the "complete absence of all jurisdiction" issue)].  Again, Plaintiff includes a lengthy quotation from the *Harvey* opinion, this time adding emphasis to the line about the "defendant act[ing] under the pretense of his standing as a county judge" [ECF No. 19 at 9].  Plaintiff's short application of *Harvey* to the present case simply states Judge Rendlen "acted not under actual color of law or

office but under the pretense of his standing as a bankruptcy judge, and brought to bear his influence as a bankruptcy judge upon litigants in his court" [ECF No. 19 at 9]. Once again, it is unclear exactly which judicial immunity exception Plaintiff wishes to prove here. If anything, Plaintiff's own words ("his influence as a bankruptcy judge upon litigants in his court") do not seem inconsistent with the Court's position that Judge Rendlen's actions related to his jurisdiction over the litigants, their case, and the relevant sanctions. To the extent Plaintiff's second discussion of *Harvey* provides an argument for finding Judge Rendlen acted in the "complete absence of all jurisdiction," the Court again finds *Harvey* unpersuasive and distinguishable on its facts.[9]

Therefore, the Court finds Judge Rendlen did not act in the complete absence of all jurisdiction.

### B.     *Conclusion*

Because Judge Rendlen engaged in judicial actions and did not act in complete absence of all jurisdiction, he qualifies for judicial immunity from Plaintiff's suit for damages. Although Plaintiff's First Amended Complaint emphasizes the "maliciousness" of Judge Rendlen's alleged conduct,[10] "allegations of bad faith or malice" do not overcome judicial immunity, and the immunity applies "even when the judge is accused of acting maliciously or corruptly." *Mireles* 502 U.S. at 11; *Pierson*, 386 U.S. at 554. Judges enjoy absolute immunity from liability for "judicial acts even if [their] exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359. Exercising jurisdiction in an erroneous manner, however, may affect the validity of the judge's actions, but does not necessarily "'make the act

---

[9] Alternatively, to the extent Plaintiff intended this portion of his Memorandum to argue Judge Rendlen's actions were not judicial in nature, the Court similarly finds *Harvey* to be unpersuasive.

[10] Plaintiff uses the words "malice," "malicious," or "maliciously" thirty-two times [ECF No. 4].

any less a judicial act; nor [does] it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction what[so]ever[.]'" *Id.* (quoting *Bradley v. Fisher*, 80 U.S. 335, 357 (1871)). "If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356). These principles reveal the far-reaching nature of judicial immunity, and without determining the full extent of such immunity, this Court concludes its protections extend to the circumstances at hand. Therefore, the Court concludes Plaintiff's claims against Judge Rendlen are barred by judicial immunity.

Accordingly,

**IT IS HEREBY ORDERED** that "Defendant's Motion to Dismiss" [ECF No. 17] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's two tortious interference with contract claims (Counts I and II) shall be **DISMISSED, with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's three tortious interference with business expectancy claims (Counts III, IV, and V) shall be **DISMISSED, with prejudice.**

Dated this  12th  Day of September, 2014.

                                                             E. RICHARD WEBBER
                                                             SENIOR UNITED STATES DISTRICT JUDGE